| | |
|---|---|
| GENOVA & MALIN | DATE: JUNE 30, 2020 |
| Attorneys for the Debtor | TIME: 9:00 A.M. |
| 1136 Route 9 | |
| Wappingers Falls, NY  12590 | |
| (845) 298-1600 | |
| Andrea B. Malin, Esq. (AM4424) | |
| Michelle L. Trier, Esq. (MT1212) | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
--------------------------------------------------------X

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| CATSKILL DISTILLING CO., LTD., | CASE NO.: 19-36861 (CGM) |
| Debtor. | |

--------------------------------------------------------X

**NOTICE OF MOTION FOR AN ORDER (I) APPROVING BID PROCEDURES AND STALKING HORSE BREAK UP FEE FOR THE SALE OF SUBSTANTIALLY ALL DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE, (II) APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES AND (III) SCHEDULING AN AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that upon the annexed Motion of CATSKILL DISTILLING CO., LTD, (the "Debtor"), dated June 15, 2020 and the Affidavit of STACY COHEN, President of the Debtor., dated June 12, 2020, the Debtor will move this Court, before the Honorable Cecelia G. Morris, Chief United States Bankruptcy Judge, at the United States Courthouse, located at 355 Main Street, Poughkeepsie, New York, on June 30, 2020, at 9:00 o'clock in the morning of that day, or as soon thereafter as counsel can be heard for an Order under 11 U.S.C. §§363(b) and 363(f) (I) approving bid procedures and stalking horse break up fee for the sale of substantially all debtor's assets free and clear of all liens, claims, interests, and encumbrances pursuant to Sections 363 and 365 of the Bankruptcy Code, as contemplated by a letter of intent (the "LOI") by and between the Debtor and Exigent Partners, LLC ("Exigent"), dated as of June 8, 2020, (II)

approving the form and manner of notice of the sale and assumption and assignment of executory contracts and leases and (III) scheduling an auction and sale hearing, finding that EXIGENT is a good faith purchaser, and granting the Debtor such other and further relief as to the Court may seem just and proper.

A copy of the LOI is attached to the Debtor's Motion hereto, where it may be examined by any interested party during the normal business hours of the Court. The cash purchase price is TWO MILLION FOUR HUNDRED THOUSAND DOLLARS ($2,400,000.00), contemplates assumption and assignment of certain leases and executory contracts of the Debtor and is conditioned upon factors specifically delineated in the LOI, including Exigent becoming the Stalking Horse Bidder and payment of a proposed Break-Up Fee to Exigent.

**PLEASE TAKE FURTHER NOTICE** that opposing affidavits or objectants to the proposed sale, if any, shall be served upon the undersigned at least three (3) days prior to the return date of this Motion.

Dated: Wappingers Falls, New York
June 15, 2020

                                                GENOVA & MALIN
                                                Attorneys for Debtor

By:    /s/ Michelle L. Trier
       MICHELLE L. TRIER (MT1212)
       Hampton Business Center
       1136 Route 9
       Wappingers Falls NY 12590
       (845) 298-1600

GENOVA & MALIN
Attorneys for the Debtor
1136 Route 9
Wappingers Falls, NY  12590
(845) 298-1600
Andrea B. Malin, Esq. (AM4424)
Michelle L. Trier, Esq. (MT1212)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
--------------------------------------------------------X
IN RE:                                                                    CHAPTER 11

CATSKILL DISTILLING CO., LTD.,                           CASE NO.: 19-36861 (CGM)

                    Debtor.
--------------------------------------------------------X

**MOTION IN SUPPORT OF ORDER (I) APPROVING BID PROCEDURES AND STALKING HORSE BREAK UP FEE FOR THE SALE OF SUBSTANTIALLY ALL DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE, (II) APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES AND (III) SCHEDULING AN AUCTION AND SALE HEARING**

**TO HONORABLE CECELIA G. MORRIS, CHIEF U.S. BANKRUPTCY JUDGE**:

CATSKILL DISTILLING CO., LTD. (the "Debtor"), by and through its counsel, GENOVA & MALIN, LLP, as and for its motion for an order authorizing the approval of bid procedures for the sale of substantially all debtor's assets free and clear of liens, claims, interests, and encumbrances, respectfully alleges as follows:

**RELIEF REQUESTED**

1. By this motion, the Debtor respectfully requests the entry of an order pursuant to sections 105, 363 and 365 of title 11, United States Code (the "Bankruptcy Code"), (I) authorizing and approving bid procedures and a breakup fee for the sale of substantially all of the Debtor's assets free and clear of all liens, claims, interests and encumbrances (annexed hereto as Exhibit

"A"), based upon the letter of intent (the "LOI") by and between the Debtor and Exigent Partners, LLC ("Exigent"), dated June 8, 2020 (annexed hereto as Exhibit "B"); (II) approving the form and manner of notice of the sale and assumption and assignment of executory contracts and leases (annexed hereto as Exhibit "C"); (III) scheduling an auction and sale hearing; and (IV) granting to the Debtor such other and further relief as to the Court may deem just and proper.

2. The Debtor filed a petition under Chapter 11 of the Bankruptcy Code on November 19, 2019, and has continued in the operation of its business as a debtor in possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

3. This Court has jurisdiction over this case, and the parties and properties affected hereby, pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2)(N).

## APPLICATION TO APPROVE BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES

4. The Debtor operates its business as a farm distillery in Bethel (Sullivan County), New York.

5. The Debtor filed for protection under Chapter 11 of the Bankruptcy Code in an effort to provide it the opportunity to procure a sale of its assets without the pressure of litigation from its largest secured creditor, Jeff Bank.

6. The Debtor has received an offer from Exigent (see Exhibit "B" annexed hereto) to purchase substantially all of the general business assets of the Debtor for a total cash purchase price of TWO MILLION FOUR HUNDRED THOUSAND DOLLARS ($2,400,000.00), subject

to the terms and conditions set forth in the LOI dated June 8, 2020[1]. The offer to purchase all or substantially all of the assets of the Debtor is contained in the letter of intent annexed hereto as Exhibit "B". The LOI contemplates that the Debtor and Exigent enter into an Asset Purchase Agreement, subject to higher and better offers in accordance with the Bid Procedures annexed hereto and subject to approval of this Court at a subsequent sale hearing.

7. The LOI further contemplates that, pursuant to Sections 363, 503(b), and 507 of the Bankruptcy Code, the Debtor be authorized to pay Exigent, as Stalking Horse Bidder a Break-Up Fee in the event that closing of a sale of the assets occurs to a person or persons other than the Stalking Horse Bidder.

8. The purchaser shall assume none of the Debtor's current obligations, other than those specifically negotiated between the purchaser and the Debtor's creditors.

9. The Debtor's assets consist of equitable interests in the real property upon which the distillery is located, a fee simple interest in a 19.77 acre parcel located on Route 17B in Bethel, New York, spirits inventory, distillery equipment, bottling equipment, furniture, fixtures, accounts receivable, and cash on hand. In order to accommodate the liquor license law requirements, any sale with consist of a two-step closing. It is anticipated that after the final closing, all operations will transfer to the purchaser and the Debtor will terminate its daily operations and prepare and file a liquidating Plan of Reorganization.

---

[1] In addition to the cash purchase price, Exigent's letter of intent contemplates an assumption and assignment of certain of the debtor's leases and executory contracts, including the agreement with the Sullivan County Industrial Development Agency.

3

10. The Debtor believes that the offer contains the best terms that the Debtor could receive for these assets. This is especially the case in light of the current economic circumstances this country is facing due to the Covid-19 health crisis. Further, the Debtor believes that the offer is fair and reasonable, particularly since the purchaser is paying the purchase price in cash. It is the position of management that without a sale it will be unable to sustain its operations. The Debtor and the Stalking Horse Bidder have negotiated the terms of the LOI in good faith and at arm's length.

11. The sale of the Debtor's operating assets involves interests of multiple parties with respect to equipment embedded in the operations such as leases from third parties or assets that may need to be conveyed directly by third parties. Exigent has advised the Debtor that it is unwilling to invest the significant resources, time and opportunity costs negotiating, resolving and/or documenting the likely multi-party arrangements necessary to consummate a going concern sale without the requested bid protections. The Debtor believes that any purchaser will require the same protections under these unusual circumstances where multiple parties may have interests in operating assets. The Debtor also believes that Exigent's efforts to resolve the multiple-party interests in the operating assets to facilitate a going concern sale will benefit other interested parties as well. It would not be fair or in the best interests of the Debtor's estate to require a stalking horse purchaser to invest its time and money to make a going concern sale work without any downside protection only to have another party try to take advantage of those same arrangements at no cost.

12. The Debtor proceeds by motion with respect to approval of the bid procedures for the sale of substantially all the debtor's assets free and clear of all liens, claims, interests and encumbrances due to the circumstances of the case, including the improbability of the Debtor

4

maintaining its operations (without a large cash infusion) and formulating a Chapter 11 Plan of Reorganization.

### BID PROCEDURES

13.     The Debtor proposes certain bid procedures as set forth in Exhibit "A" annexed hereto. Said bid procedures will enable the Debtor to conduct its proposed sale in accordance with the requirements of the applicable Bankruptcy Code and Rules and allows a reasonable structure to attract other interested parties to make competing bids.

### NOTICE PROVISION

14.     The Debtor is seeking reduction in time of the notice period required by Rule 2002. Said rule, at F.R.B.P. 2002(a)(2) requires a twenty-one (21) day notice period for the proposed sale of property of the estate. The sale set forth herein provides for a fifteen (15) day notice period.

**WHEREFORE**, the Debtor requests entry of an Order (I) approving bid procedures and breakup fee for the sale of substantially all the debtor's assets free and clear of all liens, claims, interests, and encumbrances pursuant to sections 363 and 365 of the Bankruptcy Code; (II) approving the form and manner of the notice of the sale and assumption and assignment of executory contracts and leases; (III) scheduling an auction and sale hearing; and (IV) for such other and further relief as to the Court may seem just and proper.

Dated:  Wappingers Falls, NY
       June 15, 2020

                                      GENOVA & MALIN
                                      Attorneys for Debtor

              By:    /s/ Michelle L. Trier
                    MICHELLE L. TRIER (MT1212)
                    Hampton Business Center
                    1136 Route 9
                    Wappingers Falls NY 12590

GENOVA & MALIN
Attorneys for the Debtor
Hampton Business Center
1136 Route 9
Wappingers Falls, New York 12950
(845) 298-1600
Andrea B. Malin, Esq. (AM4424)
Michelle L. Trier, Esq. (MT1212)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-------------------------------------------------------X
IN RE:                                                                         CHAPTER 11

CATSKILL DISTILLING CO., LTD.,                              CASE NO.: 19-36861 (CGM)

                      Debtor.
-------------------------------------------------------X

**DEBTOR'S AFFIDAVIT IN SUPPORT OF ORDER PURSUANT TO
11 U.S.C. §§ 363 (b) AND (f) (A) AUTHORIZING THE DEBTOR
TO SELL PROPERTY SUBJECT TO HIGHER AND BETTER BIDS AND FREE AND
CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (B) APPROVING BIDDING
PROCEDURES (C)APPROVING THE FORM AND MANNER OF NOTICE AND
(D) GRANTING PURCHASER GOOD FAITH STATUS PURSUANT TO 11 U.S.C.
§363(m)**

       I, STACY COHEN, President of the debtor herein, being duly sworn depose and say, upon information and belief:

       1.  I make this Affidavit in support of the debtor's Motion to Sell substantially all the debtor's property, dated June 12, 2020.  I am familiar with the facts set forth herein.  I have been actively and solely involved in the operations of the distillery for the last two (2) years.  During that time, I have been pursuing a sale of the assets of the debtor, including its real property, name and likeness, equipment and other assets.  I am familiar with the value of the assets and previous offers for the assets of the debtor.

4832-9557-2672, v. 2

Pg 9 of 20

2. On November 19, 2019, an Order for relief under 11 U.S.C. Chapter 11 was entered upon a petition filed by the debtor.

3. At the time the Chapter 11 case was filed with this Court, the values of the debtor's assets set forth in the Schedules filed with the debtor's petition were supported by years-old appraisals and estimations that I compiled based upon my experience in the whiskey business.

4. Although several individuals visited, toured and inspected the debtor's premises and property for purposes of purchasing same, prior to the letter of intent received from Exigent Partners, LLC, no written offers (with concise, monetary terms) were received to purchase the assets of the debtor[3].

5. It became apparent throughout the process of attempting a sale of "Catskill Distilling" that it was unlikely that the debtor would obtain an offer in the amount of the estimated value of its assets, to wit: $7,976,311.00. It is my opinion that based upon the current situation, any individual or entity willing to make a purchase offer is going to seek to obtain the assets of the debtor for well below the estimated value. This is due to the Chapter 11 filing and the health crisis that has plagued the country and the food and beverage industry, in particular. The purchase of a distillery and its assets is an extremely risky move with the current state of the economy.

---

[3] The debtor received a proposed "term sheet" from Sam Brown in or about May, 2020. Said term sheet did not include the amount that Sam Brown was offering for the assets of the debtor.

4832-9557-2672, v. 2

6. In light of the above, I believe that the letter of intent by Exigent Partners, LLC should be approved by the Court. Further, it provides a baseline for other bidders to come to the table if they exist.

7. The debtor makes this Application for an Order authorizing it to sell its tangible and intangible right, title and interest in substantially all of its assets, free and clear of all liens, claims and encumbrances, to Exigent Partners, LLC and satisfy the majority of its secured obligations.

**WHEREFORE**, I respectfully request entry of the Proposed Order; and that the debtor be granted such other and further relief as to the Court may seem just and proper.

Dated: White Lake, New York
June 12, 2020

      /s/ Stacy Cohen
STACY COHEN, President
Catskill Distilling Co., Ltd.

Sworn to before me this
12th day of June, 2020
/s/ Richard Baum
NOTARY PUBLIC, State of New York
Sullivan County Clerk's No. 2143
Commission Expires 2/19/2023

4832-9557-2672, v. 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CATSKILL DISTILLING COMPANY, LTD., | : | Case No.   19-36861-CGM |
| | : | |
| Debtor. | : | |
| | : | |

**ORDER (I)** APPROVING **BID** PROCEDURES **AND STALKING HORSE BREAKUP FEE** FOR THE SALE OF **SUBSTANTIALLY ALL DEBTORS** ASSETS **FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS** AND ENCUMBRANCES PURSUANT TO **SECTIONS 363 AND 365** OF THE BANKRUPTCY CODE, (II) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE AND **ASSUMPTION** AND ASSIGNMENT OF EXECUTORY CONTRACTS **AND LEASES AND (III)** SCHEDULING AN **AUCTION AND SALE HEARING**

Upon the motion (the "Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor") seeking, pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), orders (I) approving bid procedures and stalking horse breakup fee for the sale of assets free and clear of all liens, claims, interests and encumbrances pursuant to sections 363 and 365 of the Bankruptcy Code, (II) approving the form and manner of notice of the sale and potential assumption and assignment of executory contracts

---

[1] [Capitalized terms used but not defined herein shall have the meanings ascribed such terms in the Motion].

4832-9557-2672, v. 2

and leases, and (III) scheduling an auction and sale hearing; and any objections to entry of an order approving the bid procedures having been resolved, withdrawn or overruled; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. §157; and adequate notice of the Motion and opportunity for objection having been given; and it appearing that no other or further notice need be given; and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest;

NOW THEREFORE IT IS HEREBY FOUND, CONCLUDED AND DETERMINED THAT:

    1.A.    Copies of the Motion, the proposed Bid Procedures Order attaching the Bid Procedures (as defined below) and notice of the hearing on the Motion, were provided to all necessary parties in interest, and such notice is otherwise adequate and appropriate in the circumstances.

    2.B.    In the exercise of its business judgment, the Debtor has determined that the best method for maximizing the return to its creditors is, among other things, through a sale of substantially all of the Debtor's assets (the "<u>Sale</u>") and the potential assumption and assignment of certain executory contracts and leases.

    3.C.    In the exercise of its business judgment, the Debtor has agreed to sell substantially all of the tangible and intangible assets used in the operation of the Debtor's businesses (including assets that may be or may have been leased from third parties, the "<u>Assets</u>") as contemplated in the that certain letter of intent (the "<u>LOI</u>") by and between the Debtor and Exigent Partners, LLC (together with a to be formed entity controlled by

Exigent Partners, LLC that will be the purchaser under the contemplated asset purchase agreement with the Debtor, the "Stalking Horse Bidder") dated as of June 8, 2020, a copy of which is attached to the Motion, subject to higher and better offers.

4.D.    The LOI and its terms were negotiated by the Debtor and the Stalking Horse Bidder in good faith and at arm's length.

5.E.    The Debtor will maximize the sale price of the Assets by seeking competitive bidders and holding an auction sale (the "Auction") in accordance with the Bidding Procedures attached hereto as Exhibit 1.

6.F.    The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Assets and are in the best interests of the Debtor, their estates, creditors and other parties in interest.

7.G.    The proposed Break-Up Fee (as defined below) is: (1) an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtor's estate by the Stalking Horse Bidder; (3) reasonable and appropriate in light of the size and nature of the proposed sale and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Stalking Horse Bidder; and (4) necessary to induce the Stalking Horse Bidder to continue to pursue the sale contemplated under the LOI. Absent the Break-Up Fee, the Debtor may lose the opportunity to obtain the highest and best available offer for its Assets.

4832-9557-2672, v. 2

8.H.    All other findings made by the Court during the hearing on the Motion are incorporated herein by reference.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

a. The bid procedures attached hereto as <u>Exhibit 1</u> (the "<u>Bid Procedures</u>") are hereby approved, and the terms of the Bid Procedures are incorporated by reference as if fully set forth herein.  The Debtor is hereby authorized to enter into an asset purchase agreement with the Stalking Horse Bidder subject to highest and better offers in accordance with the Bid Procedures and approval of this Court at a subsequent sale hearing.  The failure to specifically include or reference any particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness of such Bid Procedures, it being the intent of this Court that the Bid Procedures be authorized and approved in their entirety.

b. The Sale Notice substantially in the form attached hereto as <u>Exhibit 2</u>, is hereby approved.  The Debtor shall serve, by first-class mail within three (3) business days after filing the motion to approve the executed asset purchase agreement with the Stalking Horse Bidder (the "<u>Sale Motion</u>"), a copy of this Order, the Sale Motion and the Sale Notice on (a) counsel to Jeff Bank, Richard Weiz, via email at rweisz@hodgsonruss.com; (b) counsel to IDA, Mark Ledwin via email at mark.ledwin@wilsonelser.com; (c) counsel to Siemens, Todd Ritschdorff at tritschdorff@phillipslytle.com; (d) counsel to the Stalking Horse Bidder, Douglas Rosner, Esq., Goulston & Storrs PC, 400 Atlantic Avenue, Boston, MA 02110, Email: drosner@goulstonstorrs.com; (e) the Office of the United States Trustee, 11A Clinton Avenue, Room 620, Albany, New York, NY 12207, Attn: Alicia Leonhard, Esq.; (f) the Debtor's 20 largest unsecured creditors; and (g) all persons who have filed a

request for notice and service of papers in these cases. Such service is hereby deemed to be sufficient notice of the sale of the Assets under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure provided that the Sale Motion is filed and served by no later than June 30, 2020.

c. Any person seeking to submit a competing offer for the Assets shall comply with the Bid Procedures in order to become a Qualified Bidder (as defined in the Bid Procedures) and shall submit their bid satisfying the requirements set forth in the Bid Procedures by email to (i) counsel to the Debtor, Michelle Trier at michelle_genmal@optonline.net, (ii) counsel Jeff Bank, (iii) counsel to IDA, (iv) counsel to Siemens, and (v) counsel to the Stalking Horse Bidder (collectively, the "Notice Parties") no later than 4 p.m. (prevailing New York, New York time), on July [21], 2020 (the "Bid Deadline").

d. The Stalking Horse Bidder is deemed to be a Qualified Bidder.

e. Pursuant to sections 363, 503(b) and 507 of the Bankruptcy Code, the Debtor is hereby authorized and directed to pay the Stalking Horse Bidder in cash a break-up fee (the "Break-Up Fee") in an amount equal to four percent (4%) of the aggregate sum of the consideration to be paid by the Stalking Horse Bidder for the Assets (including Cure Amounts and consideration to third parties for Assets used in the Debtor's business, the "Base Purchase Price"). The Break-Up Fee shall be paid to the Stalking Horse bidder within five (5) business days after the initial closing of a sale of any or all of the Assets by the Debtor or a subsequently appointed trustee or similar fiduciary to a person or persons other than the Stalking Horse Bidder. No other bidder shall be entitled to a break-up fee or expense reimbursement.

f. The Break-Up Fee shall (if earned) constitute an allowed super-priority administrative expense claim against the Debtor's bankruptcy estate pursuant to sections 363, 503(b) and 507(a)(2) of the Bankruptcy Code. The Break-Up fee shall be secured by a super-priority lien in the Debtor's Assets, and deemed automatically perfected by entry of the Bidding Procedures Order. The Debtor's obligation to pay the Break-Up Fee shall survive termination of the LOI or any subsequent asset purchase agreement with the Stalking Horse Bidder. No further or additional order from the Court shall be required to give effect to such provisions relating to the terms of payment of the Break-Up Fee.

g. If a Qualified Bid (as defined in the Bidding Procedures) is timely received by the Debtor, an auction will be conducted on July [23], 2020, beginning at 10:00 a.m. (prevailing New York, New York time) at the Offices of _____ and/or remotely by means accessible to Qualified Bidders and the Notice Parties (such as Zoom or Webex). If no Qualified Bids other than the bid by the Stalking Horse Bidder are received prior to the Bid Deadline, then the auction will be cancelled and the Debtor will proceed to the Sale Hearing for approval of the asset purchase agreement with the Stalking Horse Bidder.

h. Each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

i. The Sale Hearing to consider approval of the results of the Auction, or, if no Auction is held, the sale of the Assets to the Stalking Horse Bidder will be held in the United States Bankruptcy Court for the Southern District of New York,

_____ (the "Court") on August 4, 2020 at \_\_\_\_ [a.m.][p.m.] (Eastern Time) and/or remotely in accordance with the procedures established by this Court.

j. Except as otherwise provided herein, any objection to the Sale Motion shall be filed with the Court and served upon the Notice Parties and the Office of the United States Trustee so as to be received not later than _____ p.m. (Eastern Time), on July 31, 2020 (the "Objection Deadline"). An objection shall set forth with particularity the grounds for such objection or other statements of position.

k. As soon as practicable after entry of this Order, but no later than July [17], 2020 (the "Cure Notice Date"), the Debtor shall file a schedule of cure obligations (the "Cure Notice") for all of the executory contracts and leases that may be assumed and assigned to the successful purchaser of the Assets (collectively, the "Contracts"), which will include a description of each Contract and set forth the cure amount (the "Cure Amount") the Debtor believes is owed under such Contract. The Debtor will serve the Cure Notice on each of the non-debtor parties listed on the Cure Notice on the date that the Cure Notice is filed with the Court.

l. Information concerning the Stalking Horse Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code will be made available to the non-debtor parties to the Contracts upon written request to the Debtor's counsel and upon execution of a mutually acceptable confidentiality agreement. In the event that the Auction results in a successful bidder other than the Stalking Horse Bidder (the "Successful Bidder"), then at the conclusion of the Auction the Debtor will provide all information they have received concerning the

Successful Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code to any counterparty to a Contract upon written request to the Debtor's counsel and upon execution of a mutually acceptable confidentiality agreement.

m. Any objection to the assumption and assignment of a Contract (including, but not limited to, any objection relating to adequate assurance of future performance or to the Cure Amounts set forth on the Cure Schedule) shall be filed with the Court not later than the Objection Deadline and served on the Notice Parties and the Office of the United States Trustee so as to be actually received not later than the Objection Deadline; provided, however, in the event an executory contract or lease is designated after the Cure Notice Date to be assumed and assigned to the Stalking Horse Bidder or another Qualified Bidder (then becoming a Contract), the non-debtor counterparty to such Contract will have until the later of the Objection Deadline or fourteen (14) days after the date of the subsequent designation notice is filed to file an objection to the Cure Amount or the assumption and assignment of such Contract.  An objection shall set forth with particularity the grounds for such objection or other statements of position, including, if applicable, the cure amount the objector asserts to be due, any pecuniary losses and the specific types and dates of alleged defaults.

n. If a non-debtor party to a Contract fails to object to the Cure Notice in a timely manner and timely serve such objection in accordance with this Order, such party shall be forever barred from (i) contesting the assumption and assignment of such Contract, (ii) asserting or claiming against the Debtor or the Stalking Horse Bidder or the Successful

Bidder, as applicable, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Contract, or that there is any objection or defense to the assumption and assignment of such Contracts, and (iii) disputing or otherwise asserting any cure amount other than as set forth in the Cure Notice, and the payment of the Cure Amount set forth in the Cure Notice shall be deemed to satisfy fully and completely the requirements of cure and compensation requisite to the Debtors assumption and assignment to the Successful Bidder of such Contract.

o. If a non-debtor party to a Contract timely files an objection to the proposed assumption and assignment, including an objection disputing the proposed Cure Amount, then to the extent that the parties are unable to consensually resolve the objection prior to the Sale Hearing, such objection will be determined at the Sale Hearing. The Debtor, at the direction of the Stalking Horse Bidder or another successful purchaser of the Assets may at any time prior to the closing of the sale of Assets remove (or add subject to the 14-day notice requirement) a Contract to be assumed and assigned as part of the sale.

p. This Order shall be binding on the Debtor, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estate of the Debtor.

q. This Order shall constitute findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

r. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

s. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.