# EXHIBIT 'A'

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
:
In re:                                         :     Chapter 11
:
CATSKILL DISTILLING COMPANY, LTD.,             :     Case No. 19-36861-CGM
:
Debtor.                                        :
:
:
---------------------------------------------------x

## BID PROCEDURES

The following bid procedures (the "Bid Procedures") have been approved and authorized by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the above-captioned chapter 11 case of Catskill Distilling Company, Ltd. (the "Debtor") in connection with the Debtor's contemplated sale (the "Sale") of substantially all of its assets free and clear of any and all liens, claims, encumbrances, and interests and shall govern the bid process and the auction, if any (the "Auction") to be conducted to solicit higher and better offers by any party interested in such assets with respect to the asset purchase agreement between the Debtor and the purchaser to be designated by Exigent Partners, LLC (the "Stalking Horse Bidder") to be filed with the Bankruptcy Court by no later than June 30, 2020 (the "Purchase Agreement"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order to which these Bid Procedures are attached.

### Access to Due Diligence Materials

Upon a potential bidder's execution and delivery to the Debtor of an executed confidentiality agreement in form and substance acceptable to the Debtor, the Debtor shall afford such potential bidder reasonable due diligence access to the Debtor's business and assets, which diligence may or may not include access to a data room, management presentations and site visits.

### Bid Deadline and Bid Requirements

Any potential bidder that wishes to bid shall submit its bid so as to be received by Procedures by email to (i) counsel to the Debtor, Michelle Trier, Esq. (michelle_genmal@optonline.net) (ii) counsel Jeff Bank, (iii) counsel to IDA, (iv) counsel to Siemens, and (v) counsel to the Stalking Horse Bidder (the "Notice Parties") **by July 21, 2020 at 4:00 p.m. (prevailing New York, New York time)** (the "Bid Deadline"). A bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

To be a qualified bidder eligible to participate in the Auction ("Qualified Bidder"), a bidder must comply with each of the following conditions:

Marked Purchase Agreement: A bid shall include a black-lined copy of the bidder's proposed purchase agreement compared against the Purchase Agreement, showing the changes requested by the bidder. The bidder shall also submit an executed "clean" copy of its proposed purchase agreement. The bidder's proposed purchase agreement shall also attach and include schedules of proposed Contracts to be assumed and assigned.

Conditions/Contingencies: A bid shall not be subject to any conditions or contingencies to closing, including without limitation obtaining financing, internal approvals or further due diligence except the closing conditions set forth in the Purchase Agreement.

Authorization: A bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors or governing body with respect to the submission, execution, delivery and closing.

Good Faith Deposit: Except for the Stalking Horse Bidder, each Qualified Bidder shall wire to Debtors counsel to hold in escrow a cash deposit ("Good Faith Deposit") equal to 35% of the purchase price set forth in the bidder's purchase agreement.

Minimum Bid Requirement: Each Qualified Bidder's bid (i.e., the purchase price set forth in the marked purchase agreement) shall be no less than the sum of (i) the Base Purchase Price, *plus* (ii) the Break-Up Fee, *plus* (iii) cash in the amount of at least $150,000.

Assurance of Consummation and Future Performance: Each bid must contain evidence satisfactory to the Debtor that the bidder is reasonably likely (based upon availability of financing, experience and other considerations) to timely consummate a sale transaction if selected as the Successful Bidder and to adequately perform its obligations under any Contracts it proposes to be assumed and assigned.

Irrevocable: A bid must be irrevocable until five (5) business days after the closing of the sale or sales pursuant to an order of the Bankruptcy Court that is no longer subject to appeal, modification or reconsideration.

Credit Bids: Any Qualified Bidder who has a valid and perfected lien on any assets of the Debtor's estate (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured. A credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, the Break-Up Fee to the Stalking Horse Bidder and any Cure Amounts with respect to Contracts to be assumed and assigned to the Secured Creditor.

A bid received from a Qualified Bidder on or before the Bid Deadline that meets the above requirements shall constitute a "Qualified Bid." In the event that a Bid is determined by the Debtor, in consultation with counsel to Jeff Bank and IDA, not to be a Qualified Bid, such bidder shall be refunded its Good Faith Deposit within three (3) business days of that determination.

The Stalking Horse Purchaser is a Qualified Bidder and the Purchase Agreement is a Qualified Bid.

### "As Is Where Is"

The sale of the Debtor's assets that are subject to the Sale Motion shall be on an "as is, where is" basis without representations or warranties of any kind or nature, except to the extent set forth in the respective definitive purchase agreement(s) with the Stalking Horse Bidder, Successful Bidder (or Back-up Bidder), as applicable. Except as may be set forth in the definitive purchase agreement(s), any and all of the Debtor's assets shall be sold free and clear of any and all liens, claims, security interests, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code, with such to attach to the net proceeds of sale in their order of priority.

### Auction

In the event that one or more Qualified Bids (other than the bid of the Stalking Horse Bidder) are received, the Debtor shall conduct an auction (the "Auction") to determine the highest and best bid for the Debtor's assets beginning at 10:00 a.m. (prevailing New York, New York time) on July 23, 2020 at the offices of Debtor's counsel, Genova & Malin, LLP, 1136 Route 9, Wappingers Falls, New York 12590 or at such other place as the Debtor shall notify all Qualified Bidders and the Notice Parties entitled to attend the Auction, including remotely by means accessible to Qualified Bidders and the Notice Parties (such as Zoom or Webex). There will be no Auction if there are no Qualified Bids other than the bid of the Stalking Horse Bidder.

Only the Debtor, Qualified Bidders and the Notice Parties, including in each case their respective advisors, will be permitted to attend the Auction.

At the opening of the Auction, the Debtor shall announce the then highest and best bid (the "Baseline Bid"), and the manner in which bidding will proceed. Bidding thereafter shall be made on an open basis, on the record of the Auction, and all material terms of each successive bid shall be fully disclosed to all other Qualified Bidders (including the Stalking Horse Purchaser) present at the Auction.

The Debtor, in consultation with the Stalking Horse Bidder, and counsel to Jeff Bank and counsel to IDA (provided such Notice Party has not itself made a Qualified Bid), may announce

at the Auction such additional rules that it believes reasonable and necessary to maximize the value of its estate, so long as such rules are not inconsistent with the Bid Procedures.

### Overbids

Each bid made at the Auction following announcement of the Baseline Bid must be in increments of at least $25,000, provided that, any overbid shall provide for total consideration (net of any amount for the Break-Up Fee, if applicable) that exceeds the value of the total consideration of the prior bid by an incremental amount that is not less than $25,000 in cash. An overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher Qualified Bid as an overbid. The Debtor shall announce at the Auction the material terms of each overbid.

### Successful Bid

At the conclusion of the bidding, the Debtor shall determine in the exercise of its reasonable business judgment and in consultation with counsel to Jeff Bank and IDA (provided such Notice Party has not itself made a Qualified Bid) the highest and best bid (the "Successful Bid"). Subject to the foregoing, the Debtor will also select the next highest or otherwise best offer after the Successful Bid as a back-up bid (the "Back-Up Bid" less a credit in the amount of the Good Faith Deposit of the successful bidder retained by the Debtor).

### Sale Hearing and Closing

The Debtor shall seek approval of the Successful Bid at the Sale Hearing to be conducted by the Bankruptcy Court on August 4, 2020 or at such later date as may be established by the Bankruptcy Court. The Debtor will not have accepted the Successful Bid unless and until the Bankruptcy Court has approved the Successful Bid at the Sale Hearing and entered the Sale Order. The party with the Successful Bid must be able to close on the purchase of the Debtor's assets on an initial basis by no later than August 7, 2020 and on a final basis by no later than the earlier of five business days after issuance of a new liquor license(s) in favor of the Successful Bidder or December 31, 2020.

### Return of Good Faith Deposit

If applicable, the Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at the final closing. The Good Faith Deposit of the Back-up Bidder shall be held in an interest-bearing account until five (5) days after the final closing of the transactions contemplated by the Successful Bid, and thereafter returned to the Back-up Bidder. Good Faith Deposits of all other Qualified Bidders shall be held in a non-interest-bearing escrow account and promptly returned to the respective Qualified Bidders after entry of the Sale Order. If a Successful Bidder or the Back-up Bidder, as applicable, fails to consummate an approved sale because of a breach or failure to perform on the part of such bidder, the Debtor shall be

entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by such bidder.

## Miscellaneous Provisions

The Debtor reserves the right, in consultation with the Stalking Horse Bidder, to modify the Bid Procedures, so long as such modification is consistent with the terms hereof.

**EXHIBIT 'B'**

Daniel Kyle Herman<br>
Exigent Partners, LLC.<br>
4200 Scotland Street, #412<br>
Houston, TX 77007

June 8, 2020

<u>SENT VIA EMAIL</u>
Catskill Distilling Company
c/o Genova & Malin
Michelle Trier, Esq.
1136 Route 9
Wappingers Falls, NY 12590

Dear Michelle,

We are pleased to present this non-binding letter of intent outlining the general proposal to acquire through a newly formed entity ("Buyer") all or substantially all assets (tangible and intangible) of Catskill Distilling Company ("CDC" or, the "Debtor"), free and clear of all liens, claims, encumbrances, liabilities and other interests, except for assumed liabilities (the "Transaction").

<u>Form of Transaction</u>
We believe the most efficient, least expensive path to consummate the Transaction is through a §363 asset sale, which would include typical bidder protections such as a break-up fee and expense reimbursement. Our offer is conditioned on court approval of a combined break-up fee/expense reimbursement of $96,000 (approximately 4% of the cash purchase price).

<u>Purchase Consideration and Structure</u>
The Transaction contemplates:
- Cash purchase price of $2,400,000 ("Cash Payment");
- Debtor to convey or cause to be conveyed to Buyer all or substantially all of the tangible and intangible assets used in the operation of the Debtor's businesses (distillery and restaurant);
- Assumption and assignment of the current sale-leaseback agreement between the Debtor and the Sullivan County Industrial Development Authority (the "IDA"), including an additional payment to cure current amounts owed for PILOT and lease obligations, estimated at approximately $19,693.71 in the aggregate, to be paid by Buyer at the final closing as additional consideration; and
- Buyer reserves the right to designate other executory contracts, licenses and leases to be assumed and assigned to Buyer at closing.

<u>Deposit</u>
5% cash deposit in escrow upon execution and delivery of definitive asset purchase agreement.

<u>Closing</u>
The Transaction contemplates a two-stage closing:
- initial closing promptly after entry of the Approval Order (defined below). Until later of issuance of liquor licenses to Buyer and the Outside Closing Date, Debtor will operate its business in accordance

4832-3737-4655, v. 4

- with operating covenants acceptable to Buyer, Buyer will be entitled to all net income (after operating expenses) and will commit to fund through a debtor in possession loan operating expenses arising during the interim period that are not paid from operating revenue;
- Final closing promptly after Buyer obtains liquor licenses;
- If the conditions to the final closing are not satisfied or waived by Buyer on or prior to the Outside Closing Date, and Buyer is not then in breach of the definitive purchase and sale agreement, Buyer will be entitled to the return of its deposit.

Subject to the conditions set forth in this LOI, the parties contemplate that the initial closing will occur no later than July 30, 2020, and the final closing by no later than December 31, 2020 ("Outside Closing Date").

Conditions to Close
Initial closing is contingent on:
- Satisfactory legal and confirmatory due diligence with an outside date of June 30, 2020 ("Due Diligence Outside Date");
- Entry into a definitive purchase and sale agreement and other documents, instruments and agreements incidental thereto, which shall contain customary representations, warranties, conditions and covenants for transactions of a similar size and nature;
- Necessary third-party consents, if any;
- Bankruptcy Court Approval Order approving the Transaction (including the proposed debtor in possession financing) in form and substance acceptable to Buyer (and containing additional terms summarized below) shall have been entered and shall not be subject to any stay and shall be final and non-appealable, unless the latter requirement is waived by Buyer; and

Final closing is contingent on:
- Receipt of new liquor licenses by the State of New York.

Bankruptcy Court Approval Order
We recognize that Debtor's acceptance of the transactions described herein will require the approval of the United States Bankruptcy Court. Debtor agrees to file an appropriate motion seeking such approval in an order reasonably acceptable to us, which provides, *inter alia*, that the sale of the assets shall be free and clear of all liens, claims, encumbrances, liabilities and other interests and that we are a good faith purchaser entitled to the protections of sections 363(m) and 364(e) (the "Approval Order").

Financing
The transaction is not contingent on financing.

Benefits to the Estate
We believe this bid maximizes value for all constituents and serves as a far better alternative than the recently filed chapter 7 conversion motion. At a minimum, our bid, and our post-closing intent to invest new capital to grow the business, accomplishes the following relative to a chapter 7 liquidation:
- Retains existing jobs and creates new jobs
- Generates federal, state, and local tax revenues
- Avoids the expense and value diminution that will likely be experienced in a lengthy liquidation process

In addition, we contemplate entering into favorable arrangements with local critical vendors that will allow them to recover a portion of their losses in exchange for the continued provision of goods and services on terms acceptable to us.

The above benefits are most relevant in an uncertain COVID-19 economy, where asset values are low, employment opportunities are scarce, and city, county, and state budgets are under significant pressure.

Miscellaneous

This LOI (i) shall be governed by and construed in accordance with the internal laws of the state of New York without regard to conflicts of laws, provisions, or principles of comity, (ii) may be executed in one or more counterparts, including electronically by PDF signature or Docusign, each of which will be deemed an original and which, when taken together, will be deemed to constitute one in the same agreement; and (iii) is not a substitute for the definitive agreements, which will contain all of the terms and conditions necessary for a transaction of this type and nature.

This LOI will expire by its own terms unless executed by the Debtor and returned to us by 5:00 p.m. EDT on June 12, 2020.

Thank you for the opportunity to make an offer for the CDC assets. If you have any questions concerning our offer, please contact me at (917) 805-8723.

Very truly yours,

*[signature]*

Daniel Kyle Herman

Acknowledged and Accepted this 12th day of June __, 2020

By: *[signature]*
Name: Stacy Cates
Title: Pres.

4832-3737-4655, v. 4

# EXHIBIT 'C'

GENOVA & MALIN  
Attorneys for the Debtor  
1136 Route 9  
Wappingers Falls, NY 12590  
(845) 298-1600  
Andrea B. Malin, Esq. (AM4424)  
Michelle L. Trier, Esq. (MT1212)  

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
POUGHKEEPSIE DIVISION  
------------------------------------------------------X  
IN RE:                                                                    **CHAPTER 11**

CATSKILL DISTILLING CO., LTD.,                        **CASE NO.: 19-36861 (CGM)**

            Debtor.  
------------------------------------------------------X  

## NOTICE OF INTENDED SALE

    Notice is hereby given that on **AUGUST 4, 2020 at 9:00 a.m.**, at the United States Bankruptcy Court, 355 Main Street, Poughkeepsie, New York, the above-captioned debtor, pursuant to 11 U.S.C. §§363(b) and 363(f) intends to sell the following:

**ALL ASSETS OF CATSKILL DISTILLING CO., LTD., INCLUDING REAL PROPERTY INTERESTS, INVENTORY, EQUIPMENT, FURNITURE, FIXTURES, AND ACCOUNTS RECEIVABLE**

    1.    This notice is given in order to permit parties in interest to object to the intended sale and request a hearing. Unless a party in interest files a written objection and request for hearing **before 5:00 p.m. on July 28, 2020,** the intended sale described in this notice will go forward. Objections stating the reason therefor should be filed with the U. S. Bankruptcy Court, 355 Main Street, Poughkeepsie, New York 12601 with copies to the debtor's attorney at the address shown below and the U.S. Trustee, 11A Clinton Avenue, Room 620, Albany, New York, 12207.

    2.    In the event of any written objections and requests for a hearing, the Bankruptcy Court will schedule a hearing on appropriate notice.

    3.    Terms of sale: Bank or wire transfer only, unless other terms have been agreed to in advance by the debtor in accordance with the terms and conditions of the asset purchase agreement approved by the Court, and as is further set forth in the attached Bid Procedures previously approved by the Court. A good faith cash deposit will be required under the Court-approved Bid Procedures.

    4.    All deadlines, requirements for being designated a Qualified Bidder and the date of

the Auction, if any, are set forth in the attached Court-approved Bid Procedures.

5. The debtor reserves the right to reject bids which in its opinion are insufficient or do not conform to the terms of the sale and without further notice, except as orally announced at said sale or continuance thereof, to continue the sale from time to time and from place to place.

6. An offer has been made by EXIGENT PARTNERS, LLC, as the stalking horse bidder, in the estimated amount of $2,400,000.00 to acquire substantially all of the business assets of the debtor and the debtor intends to accept the same unless a higher and better offer is timely received in writing prior to the scheduled Auction pursuant to the Bid Procedures **or** made at the time of the Auction as set forth in the Bid Procedures. The full offer of the stalking horse bidder is on file with the Clerk's Office of the Court.

Dated: Wappingers Falls, NY
       July ____, 2020

                                      GENOVA & MALIN
                                      Attorneys for Debtor

                        By: _____
                                  Michelle L. Trier (MT1212)
                                  Hampton Business Center
                                  1136 Route 9
                                  Wappingers Falls, NY  12590
                                  (845) 298-1600